**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

———————————

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                              No.    1:17-cr-02557 WJ

PETER FITZPATRICK,

      Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART and DENYING IN PART DEFENDANT'S MOTIONS**

THIS MATTER comes before the Court upon the following motions filed by the Defendant:

- Notice of Request for Production of Statements and/or Jenck's Act Material, filed January 17, 2018 **(Doc. 25)**;

- Motion for Disclosure of Prior Act Evidence, filed January 17, 2018 **(Doc. 26)**;

- Motion and Supporting Memorandum for Discovery of Records or Reports and Facts or Data Underlying Expert Opinions, filed January 17, 2018 **(Doc. 27)**;

- Notice of Brady Request and Supporting Memorandum to Produce Favorable Evidence, filed January 17, 2018 **(Doc. 28)**;

Having considered the parties' written arguments and applicable law, the Court finds that some of Defendant's motions are meritorious and shall be **GRANTED IN PART**, but are otherwise **DENIED IN PART**.

# BACKGROUND[1]

On September 21, 2017, a grand jury indicted defendant with three counts of Interstate

Stalking pursuant to 18 U.S.C. § 2261A(2).  The Interstate Stalking statute provides:

> Whoever--
>> **(2) with the intent to kill, injure, harass, intimidate**…uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that--
>> **(A) places that person in reasonable fear of the death of or serious bodily injury** to a person described in clause (i), (ii), or (iii) of paragraph (1)(A); **or**
>> **(B)** causes, attempts to cause, or would be reasonably expected to cause **substantial emotional distress** to a person described in clause (i), (ii), or (iii) of paragraph (1)(A),
>
> shall be punished as provided in section 2261(b) of this title.  18 U.S.C. § 2261A (emphasis added).

A.    <u>Previous Incidents</u>.

Defendant was employed at the Mexican Gray Wolf Recovery Program ("MGWRP").

On July 4, 2014, Defendant attended a party with his co-workers in Arizona.  At the party,

Defendant became angry and accused a co-worker of stealing his dog.  Defendant allegedly

yelled at the co-worker, causing the co-worker's own dog to bark at defendant.  Defendant pulled

out a gun and pointed it at the co-worker's dog.  After this incident, the MGWRP evacuated

employees from the Alpine, Arizona office and moved them to Springerville, Arizona.

Defendant was arrested by Arizona state law enforcement on July 7, 2014 and charged with

disorderly conduct with a weapon.  Defendant resigned on July 12, 2014 in lieu of termination.

On January 2, 2015, an informant contacted a biologist with the MGWRP and reported

his or her concerns about the defendant's mental health.  The informant stated he or she did not

think anyone was in immediate danger, but wanted to let them know that Defendant was angry

---

[1] The following allegations come from the Defendant's motions and the Government's responses thereto.

with the United States Fish and Wildlife Service ("USFWS"). Although Defendant had not stated he was going to retaliate, the informant was concerned that the defendant may kill himself or take revenge and then kill himself. The informant stated he or she was a childhood friend of Defendant and believed Defendant might be "crazy", but had not spoken with defendant for six months.

On January 6, 2015, the informant contacted SA Roper. The informant stated that he had last spoken to Defendant six months prior when Defendant requested assistance in obtaining an attorney. The informant stated that Defendant seemed afraid, angry, paranoid, and seemed to be having mental issues.

A safety briefing was held for members of the MGWRP on January 13, 2015. Employees were informed they had received information that Defendant was mentally unstable and could pose a threat to USFWS and Arizona Game and Fish Department ("AZGFD") personnel. Employees were told that Defendant had not made any direct threats, but he was experiencing paranoia, anger, and depression. The employees were told that it did not appear that Defendant was residing in Arizona or New Mexico.

In February 2015, federal agents visited Defendant's parents' home and also spoke to Defendant on the phone. The informant talked to another agent on April 22, 2015, and reported that he or she had spoken to defendant a few months prior, and defendant seemed to be depressed, but that the informant may have overreacted in the initial assessment. The informant told SA Roper that Defendant never made any threats or remarks about violence to anyone, except to himself.

B.      Charged Incidents.

The incidents underlying the charges occurred approximately a year later. On February 1, 2016, Defendant sent emails, texts, and phone calls to various employees of the MGWRP, focusing primarily on the three victims in this case: J.O., S.B., and T.B.. For example, on July 12, 2016, Defendant sent an email to all three victims containing a sixteen page letter which accused the FBI and Department of Interior of investigating him. Defendant accused J.O. and S.B. of being complicit with the investigation, and accused several co-workers of placing surveillance equipment in his home.

Defendant apparently had consistent communication with the victims, which the Government interprets as aggressive or alarming. These statements included:

- "you do not get to walk away. I am coming."
-  References to T.B.'s daughter.
- "you held me down while Chavez and the FBI raped and tortured me. This is a hard thing to forgive."
- "you will be exposed and held accountable for your crimes against me and the American people. See you soon."
- "your agency has fucked so many people you probably don't know who I am. I am Peter Fitzpatrick and I am not going away until we have peace. I promise."

These messages continued until August 31, 2017.

**DISCUSSION**

**I.     Defendant's Notice of Request for Production of Statements and/or Jenck's Act Material, filed January 17, 2018 (Doc. 25).**

Defendant filed a notice requesting the production of certain Jencks act statements, but did not otherwise request relief. The Jencks Act, 18 U.S.C. §3500, provides ,"[i]n any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). The Jencks Act

requires the government to provide the statements only *after* the witness has testified. *See* 18 U.S.C. § 3500(b). The Court does not have discretion to order prior disclosure. *See United States v. Nevels*, 490 F.3d 800, 803 (10th Cir. 2007) ("The Jencks Act entitles a federal criminal defendant to obtain any pretrial statement and report made by a government witness, but only after the witness has testified on direct examination at trial."). Jencks material differs from *Brady* material in that it covers any statement made by the government's witness whether or not it is directly contradictory to his or her testimony. *United States v. Smaldone*, 544 F.2d 456, 460 (10th Cir. 1976).

Defendant's notice did not include a request for relief. However, the Government responded, stating that it will comply with all requirements of relevant law. Therefore, there is no issue for the Court to resolve. The Court appreciates that it has generally been the practice of the Government to produce such statements ahead of trial so as to avoid a hearing during the middle of a jury trial.

## II.    Defendant's Motion for Disclosure of Prior Act Evidence, filed January 17, 2018 (Doc. 26).

Defendant requests this Court to order the government to disclose any Fed. R. Evid. 404(b) evidence it intends to use at least 90 days prior to trial. Defendant argues he needs the evidence 90 days prior to fully investigate any proposed Rule 404(b) evidence. The Government states that it will file a Rule 404(b) notice prior to trial, but requests the Court set a deadline of two weeks before trial.

Rule 404(b)(2) provides:

> **(2) Permitted Uses; Notice in a Criminal Case.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:

**(A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial**; and

**(B)** do so before trial--or during trial if the court, for good cause, excuses lack of pretrial notice.

A previous discovery order set the deadline at five days before trial. *See* **Doc. 8**. On February 6, 2018, the Court issued an Order Granting Continuance of Trial and Pretrial Deadlines **(Doc. 52)**. An attachment, Preparation for Criminal Trial, specified that the Government will provide notice of potential Rule 404(b) evidence not less than two weeks before trial **(Doc. 52-1)**. However, two weeks is also the deadline for parties to file motions in limine **(Doc. 52-1)**. This does not give the Defendant sufficient time to file any necessary motion in limine. The Court concludes that thirty days will provide reasonable notice of the general nature of any Rule 404(b) evidence. Therefore, the Government shall file any notice in accordance with Rule 404(b)(2) at least thirty days before trial.

## III. Motion and Supporting Memorandum for Discovery of Records or Reports and Facts or Data Underlying Expert Opinions (Doc. 27).

Defendant requests certain disclosures pursuant to Fed. R. Crim. P. 16(a)(1)(F) & (G), and Fed. R. Crim. P. 26.2. The Government responded that the forensic search of Defendant's electronic equipment has not been completed, and will be disclosed immediately to Defendant when it is. The Government argues that this motion is premature until the forensic search has been completed, as the Government does not know whether an expert will be called. Trial is set for July 2, 2018.

The Court agrees that, at this time, it is premature to order disclosure. At the time of the Government's response, a forensic search of Defendant's electronics had not been completed. The Government has not yet decided whether an expert will be called in its case in chief. The Court therefore denies Defendant's motion as premature. Defendant may renew his request

closer to trial if the Government has not designated an expert or has not disclosed the requested

discovery.  However, the Government represents that if it does disclose an expert, it will disclose

all necessary items to Defendant in compliance with existing law.

## IV.   Notice of Brady Request and Supporting Memorandum to Produce Favorable Evidence, filed January 17, 2018 (Doc. 28).

Defendant seeks an order pursuant to *Brady, Giglio*, and Fed. R. Crim. P. 16 compelling

the Government to search for and disclose all evidence favorable to the Defendant.  Since the

Government asserts it has complied with these requests and the Defendant has not shown cause

to question these representations, the motion is **DENIED IN PART**.  However, the Court will

order the Government to produce *Giglio* material at least **five days** before trial.

### A.    Legal Standard.

"[T]he *Brady* rule, Rule 16 and the Jencks Act, exhaust the universe of discovery to

which the defendant is entitled."  *United States v. Presser*, 844 F.2d 1275, 1285 (6th Cir. 1988);

*see also United States v. Griebel*, 312 F. App'x 93, 95–96 (10th Cir. 2008) (noting the

"[G]overnment's discovery obligations [] are defined by Rule 16, Brady, Giglio and the Jencks

Act" and stating the defendant's request to expand his discovery rights beyond those three

sources was unsupported by the law).

#### 1.    *Brady*.

The *Brady* doctrine was established by the Supreme Court in *Brady v. Maryland*, 373

U.S. 83, 87 (1963):

> We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

The United States Supreme Court in *Kyles v. Whitley*, 514 U.S. 419 (1995), described the responsibility of the government in dealing with *Brady*:

> But the prosecution, which alone can know what is undisclosed, must be assigned the responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of "reasonable provability" is reached. This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecution succeeds or fails in meeting this obligation, the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of important is inescapable.

*Id.* at 437–38. *Brady* also extends to evidence affecting witness credibility. *See Giglio v. United States*, 405 U.S. 150, 154 (1972).

The government is not required to produce evidence simply because it *might* be exculpatory. *United States v. Agurs*, 427 U.S. 97, 110, n. 16 (1976) ("It is not to say that the State has an obligation to communicate preliminary, challenged, or speculative information."); *United States v. Fleming*, F.3d 1325, 1331 (10th Cir. 1994) (noting "[t]he mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard."). The Court does not have a duty to directly supervise the government's disclosure of *Brady* information, as such supervision would necessitate a complete review of all material gathered during the government's investigation. *See United States v. McVeigh*, 923 F. Supp. 1310, 1313 (D. Colo. 1996). Rather, the duty to determine what disclosure is required under *Brady* rests with the prosecution. *See Bank v. Reynolds*, 54 F.3d 1508, 1517 (10th Cir. 1995); *McVeigh*, 923 F.Supp. at 1313. The Court should rely on the government's representations of its compliance with *Brady* unless the defendant shows cause to question them and the materiality of the evidence sought. *See McVeigh*, 923 F.Supp. at 1314; *see also Banks v. Dretke*, 540 U.S. 668, 696 (2004) ("[o]rdinarily, we presume that public officials have properly discharged their official duties.").

*Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987) (where a defendant only makes a general request for exculpatory material under *Brady*, the government decides which information must be disclosed.).

2.    <u>Fed. R. Crim. P. 16</u>.

Federal Rule of Criminal Procedure 16(a)(1) establishes guidance as to the nature and scope of pretrial discovery that the United States must provide. As to documents and objects, Rule 16(a)(1)(E) provides the following:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i)    the item is material to preparing the defense;
> (ii)    the government intends to use the item in its case-in-chief at trial; or
> (iii)    the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).

A defendant must make a prima facie showing of materiality before he is entitled to obtain requested discovery. *See United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." *Id.* To show materiality, the evidence must bear some abstract logical relationship to the issues in the case such that pretrial disclosure would enable the defendant significantly to alter the quantum of proof in his favor. *United States v. Lloyd*, 992 F.2d 348, 350–51 (D.C. Cir. 1993). This materiality requirement is not a heavy burden; rather, evidence is material as long as there is a strong indication that the evidence "will play an important role in uncovering admissible evidence, aiding witness preparation,

corroborating testimony, or assisting impeachment or rebuttal." *Id.* at 351 (internal quotations

omitted). Nevertheless, ordering the production by the government of discovery without any

preliminary showing of materiality is inconsistent with Rule 16. *Mandel*, 914 F.2d at 1219.

**B.      Discussion**.

The Government asserts it has provided, or is in the process of providing, all material that

tends to be exculpatory under *Brady.*

The Government also argues it need not produce impeachment or *Giglio* material well in

advance of trial.  The Court agrees, but notes that the Government has not stated when it plans on

producing such material.  Impeachment evidence falls under *Brady* when the reliability of a

given witness may be determinative of a defendant's guilt or innocence.  *Giglio v. United States*,

405 U.S. 150, 154 (1972).  *Brady* obligates the prosecution to disclose "evidence affecting

credibility." *Id.*  *Giglio* material need only be produced to give Defendant sufficient time to

prepare to impeach a witness, but should not be produced so early as to prematurely identify

witnesses.    The Court concludes that *Giglio* material should be produced **at least five days**

before trial. *See United States v. Beckford*, 962 F.Supp. 780, 788-89 (E.D. Va. 1997); *see also*

*United States v. Gonzalez-Montoya*, 161 F.3d 643, 649-50 (10th Cir. 1998) (explaining that

delayed disclosure of impeachment evidence did not violate *Brady*/*Giglio* because defendant

received evidence in time to use it to impeach witness).

The Government represented in its response that it has complied as required under *Brady,*

*Giglio,* the Jenck's Act, and Rule 16.[2]    Absent some showing by the Defendant that the

---

[2] Neither party focused on Fed. R. Crim. P. 16 disclosure, but the Government represents it has disclosed discovery
as required by that rule.

Government has not complied, the Court will deny the motion as moot.[3]  In a reply, Defendant

did not contest most of the Government's representations.  The Court briefly addresses

Defendant's objections in his reply to the Government's representations.

In Particularized *Brady* Requests 1 through 4, Defendant seeks evidence of government

surveillance.  Defendant argues that the intent behind his communications was not to harass the

victims, but to stop government surveillance of him.  He states that his request for particularized

Brady requests 1 through 4 are exculpatory, because he was in fact being surveilled, and not

intending to harass the victims. The Court does not find this argument persuasive.  Defendant

could have intended to both stop surveillance and harass the victims (who he perceived to be

participating in investigations) at the same time.  Nevertheless, the Government has represented

that he was not surveilled by a federal agency prior to this case.  The Government also

represented that it has provided to defendant any federal surveillance of him.  As to

Particularized Request 9, the Government represented that it has turned over any such discovery.

Based on these representations, the Court denies Defendant's request as moot.

## CONCLUSION

Because there was no request for relief in Defendant's Notice of Request for Jenck's Act

material **(Doc. 25)**, the Court declines to rule thereon.  Defendant's Motion for Disclosure of

Prior Act Evidence **(Doc. 26)** is **GRANTED IN PART** in that the Government shall disclose all

Fed. R. Evid. 404(b) evidence at least thirty days before trial.  However, the Court **DENIES**

Defendant's motion for records, facts, or data underlying expert opinions **(Doc. 27)** as premature.

Finally, Defendant's Notice of Brady Request **(Doc. 28)** is **GRANTED IN PART** and **DENIED**

**IN PART** in that the Government has represented that it has already disclosed all such *Brady*

---

[3] This ruling does not prevent Defendant from renewing his request and showing how the Government has not
complied with its duties under Fed. R. Crim. P. 16, *Brady*, or *Giglio*.

material and Defendant has not shown cause otherwise.  However, *Giglio* material shall be disclosed at least **five days** before trial.

       **IT IS SO ORDERED**.

                                    _____

                                    UNITED STATES DISTRICT JUDGE