# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                         No.    1:17-cr-02557 WJ

PETER FITZPATRICK,

    Defendant.

## MEMORANDUM OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS

THIS MATTER comes before the Court on Defendant's Motion to Compel Disclosure of the Identity of the Confidential Informant Referenced in Discovery Materials, filed January 17, 2018 (**Doc. 29**), and Motion for Bill of Particulars, filed January 17, 2018 (**Doc. 30**). Having considered the parties' written and oral arguments and applicable law, the Court finds that Defendant's motions are generally not well-taken, and therefore, are **DENIED IN PART.** The Motion for Bill of Particulars is **GRANTED IN PART** as specified below.

## BACKGROUND[1]

On September 21, 2017, a grand jury indicted Defendant with three counts of Interstate Stalking pursuant to 18 U.S.C. § 2261A(2). The Interstate Stalking statute provides:

> Whoever--
>     **(2) with the intent to kill, injure, harass, intimidate**…uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that--

---

[1] The following allegations come from the Defendant's motions and the Government's responses thereto.

> **(A) places that person in reasonable fear of the death of or serious bodily injury** to a person described in clause (i), (ii), or (iii) of paragraph (1)(A); **or**
> **(B)** causes, attempts to cause, or would be reasonably expected to cause **substantial emotional distress** to a person described in clause (i), (ii), or (iii) of paragraph (1)(A),
>
> shall be punished as provided in section 2261(b) of this title.

18 U.S.C. § 2261A (emphasis added).

The indictment alleges in Count 1:

> On or between February 1, 2016 and September 1, 2017, in the District of New Mexico, the defendant, **PETER FITZPATRICK**, with the intent to harass, and intimidate, used the mail, any interactive computer service and electronic communication service and electronic communication system of interstate commerce, and any other facility of interstate and foreign commerce, including a telephone, to engage in a course of conduct that placed J.O., a person known to the grand jury, in reasonable fear of death and seriously bodily injury, and caused, attempted to cause, and would reasonably be expected to cause substantial emotional distress to J.O.

Counts 2 and 3 are similar as to victims T.B. and S.B..

A.  <u>Previous Incidents</u>.

Defendant was employed at the Mexican Gray Wolf Recovery Program ("MGWRP"), which was part of the United States Fish and Wildlife Service ("USFWS"). On July 4, 2014, Defendant attended a party with his co-workers in Arizona. At the party, Defendant became angry and accused a co-worker of stealing his dog. Defendant allegedly yelled at the co-worker, causing the co-worker's own dog to bark at Defendant. Defendant pulled out a gun and pointed it at the co-worker's dog. After this incident, the MGWRP evacuated employees from the Alpine, Arizona office and moved them to Springerville, Arizona. Defendant was arrested by Arizona state law enforcement on July 7, 2014 and charged with disorderly conduct with a weapon. Defendant resigned on July 12, 2014 in lieu of termination.

On January 2, 2015, an informant contacted a biologist with the MGWRP and reported his or her concerns about the defendant's mental health. The informant stated he or she did not think anyone was in immediate danger, but wanted to let them know that Defendant was angry with the USFWS. Although Defendant had not stated he was going to retaliate, the informant was concerned that the defendant may kill himself or take revenge and then kill himself. The informant stated he or she was a childhood friend of Defendant and believed Defendant might be "crazy", but had not spoken with Defendant for six months.

On January 6, 2015, the informant contacted special agent Roper. The informant stated that he had last spoken to Defendant six months prior. The informant stated that Defendant seemed afraid, angry, paranoid, and seemed to be having mental issues.

A safety briefing was held for members of the MGWRP on January 13, 2015. Employees were informed they had received information that Defendant was mentally unstable and could pose a threat to USFWS and Arizona Game and Fish Department ("AZGFD") personnel. Employees were told that Defendant had not made any direct threats, but he was experiencing paranoia, anger, and depression. The employees were told that it did not appear that Defendant was residing in Arizona or New Mexico.

In February 2015, federal agents visited Defendant's parents' home and also spoke to Defendant on the phone. The informant talked to another agent on April 22, 2015, and reported that he or she had spoken to Defendant a few months ago, and Defendant seemed to be depressed, but that the informant may have overreacted in the initial assessment. The informant told SA Roper that Defendant never made any threats or remarks about violence to anyone, except to himself.

B. <u>Charged Incidents</u>.

The incidents underlying the charges occurred approximately a year later. On February 1, 2016, Defendant sent emails, texts, and phone calls to various employees of the MGWRP, focusing primarily on the three victims in this case: J.O., S.B., and T.B.. For example, on July 12, 2016, Defendant sent an email to all three victims containing a sixteen page letter which accused the FBI and Department of Interior of investigating him. Defendant accused J.O. and S.B. of being complicit with the investigation, and accused several co-workers of placing surveillance equipment in his home.

Defendant apparently had consistent communication with the victims, which the Government interprets as aggressive or alarming. These statements included:

- "you do not get to walk away. I am coming."
- References to T.B.'s daughter.
- "you held me down while Chavez and the FBI raped and tortured me. This is a hard thing to forgive."
- "you will be exposed and held accountable for your crimes against me and the American people. See you soon."
- "your agency has fucked so many people you probably don't know who I am. I am Peter Fitzpatrick and I am not going away until we have peace. I promise."

These messages continued until August 31, 2017. The Court held a hearing on the Motions on March 22, 2018. Neither party presented evidence at the hearing.

## DISCUSSION

**I. Defendant's Motion to Compel Disclosure of the Identity of the Confidential Informant Referenced in Discovery Materials (Doc. 29).**

Defendant seeks the identity of the informant, to determine whether he or she has any exculpatory information.

    A.    <u>Legal Standard</u>.

The Government has a privilege "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law."

*Roviaro v. United States,* 353 U.S. 53, 59 (1957). "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id* . "

In deciding whether to order the disclosure of an informant's identity, "the court must balance the public's interest in protecting the flow of information against a defendant's right to prepare a defense, considering the particular circumstances of each case, including the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *United States v. Mendoza*, 236 F. App'x 371, 386 (10th Cir. 2007) (internal quotation marks omitted). "[M]ere speculation about the usefulness of an informer's testimony is not sufficient." *United States v. Scafe,* 822 F.2d 928, 933 (10th Cir.1987). "Disclosure is not required where the information sought from the informer would be merely cumulative or where the informant is not a participant in or a witness to the crime charged." *United States v. Moralez,* 908 F.2d 565, 567 (10th Cir. 1990).

B. <u>Analysis</u>.

The Tenth Circuit has repeatedly stated that disclosure of the identity of mere "tipsters" who did not witness or participate in the alleged criminal activity is not required. *United States v. Zamora*, 784 F.2d 1025, 1030 (10th Cir. 1986); *United States v. Brantley*, 986 F.2d 379, 383 (10th Cir. 1993); *United States v. Gordon*, 173 F.3d 761, 767–68 (10th Cir. 1999) ("We have refused disclosure in similar cases where the informant has limited information, was not present during commission of the offense, and cannot provide any evidence that is not cumulative or exculpatory."). There is strong public policy against revealing the identity of those who call law

enforcement with tips about possible violent behavior. *See United States v. Wynne*, 993 F.2d 760, 766 (10th Cir. 1993) (mere 'citizen-informer' was not a government informant whose identity needed to be disclosed), citing 1 Wayne R. LaFave, *Search and Seizure* § 3.3 at 611 ("[C]ourts have quite properly drawn a distinction between [the usual concept of a police informant] and the average citizen who by happenstance finds himself in the position of a victim of or a witness to criminal conduct and thereafter relates to the police what he knows as a matter of civic duty."); *United States v. Moralez*, 917 F.2d 18 (10th Cir. 1990); *United States v. Martinez*, 979 F.2d 1424, 1426 (10th Cir. 1992). The informant's last apparent communication with Defendant was in January or February of 2015, a year before the charged incidents began. The informant may have an opinion of Defendant's intent as of a year to a year and half prior to the charged incidents, but there is no indication that he or she has any knowledge of his intent during the charged incidents. Moreover, the Government is concerned about the safety of the informant if his or her identity is revealed, and whether disclosure would inhibit future tipsters from coming forward. The Court concludes that the informant is a mere tipster who did not witness or participate in the alleged activity. Moreover, revealing the identity of this informant would severely inhibit tipsters from reporting people they suspect will commit violent acts.

Moreover, the informant's opinion on whether Defendant intended to kill or harm the victims is not relevant to the elements of the charged offense of interstate stalking. For example, the informant's tip and subsequent recanting is not relevant to whether Defendant (1) intended to harass or intimidate the victims, whether he (2) intended to engage a course of conduct that put the victims in reasonable fear of death or bodily injury, or whether (3) his conduct would reasonably be expected to cause substantial emotional distress. *See* § 2261A(2). Had the Government charged Defendant with intent to kill or cause substantial bodily harm, the

informant's opinion *may* have been relevant. Moreover, as noted above, the informant's opinion about whether Defendant intended to harm or kill the victims was based on interactions with the Defendant that occurred more than a year before the charged incidents. Therefore, the Court concludes that any knowledge of his intent to harm the victims in July of 2014 is not relevant to the Defendant's actions that began in February 2016.

To the extent the informant's statements could be relevant, the Court concludes that the informer provided merely cumulative, and not exculpatory, information. The tipster called the USFWS and stated that he or she did not think anyone was in immediate danger, but wanted to let them know that Defendant was angry with the USFWS. The informant was worried that defendant may kill himself or take revenge and then kill himself. However, the informant was clear that Defendant did not make any threats. In the retraction, the informant stated that Defendant seemed depressed, but that he or she overreacted in thinking that Defendant may take revenge against USFWS employees. Although the initial call was on January 2, 2015, this tip was based on the informant's communications with the Defendant six months prior – around the time of the July 4, 2014 incident. The victims and USFWS agents were already aware of Defendant's behavior and state of mind during and after the July 4, 2014 incident. Based on the July 4 incident, the USFWS moved the employees (including the victims) to another city. Therefore, the Court concludes that the informant's tips were merely cumulative.

Defendant argues that the informant's tip is relevant because it made the victims fearful, and altered how they perceived Defendant's subsequent communications. Following the informant's tip, the agents held a safety briefing and said that there were no threats, but Defendant was depressed and upset about being let go. However, the informant did not provide any new information that was not already known to the victims and USFWS following the July

7

4, 2014 incident. *See, e.g.*, *United States v. Long*, 774 F.3d 653, 663 (10th Cir. 2014). The victims were already afraid after he pulled out the gun at the work party and pointed it at a coworker's dog. The Court therefore concludes that this information is merely cumulative for purposes of determining whether the victims were reasonably afraid.

Even if a slight possibility exists that Defendant may benefit from disclosure, that possibility does not outweigh the Government's compelling need to protect tipsters who report concerns about mental health and possible violence. *United States v. Martinez*, 979 F.2d 1424, 1426 (10th Cir. 1992), *citing United States v. Moralez*, 908 F.2d 565, 568 (10th Cir. 1990). For the foregoing reasons, the Court concludes that the Defendant's desire for this information does not outweigh the Government's need to protect tipsters.

    C.    *In Camera Hearing*.

The Court declines to hold an *in camera* hearing because the informant's statements are not relevant to the conduct at issue, and is otherwise cumulative. *See United States v. Moralez*, 908 F.2d 565, 568-69 (10th Cir. 1990) (where defense showed that informant's statements were essential to case, declining to hold *in camera* hearing was abuse of discretion.). Any reason to further inquiry into what the informant knows is based on mere speculation. Here, it is clear that the informer is a mere tipster who did not witness or participate in the criminal conduct, and therefore the Court need not hold an *in camera* hearing. *Id.* at 568. The undersigned will not drag a tipster into federal court for a hearing where it is clear the informer's testimony is irrelevant or cumulative, and where the informant did not participate or witness the charged crimes.

Because the statements given are not useful for the Defendant's defense, the Court concludes that any further investigation of the informant would not yield useful information.

8

Defendant does not need the disclosure of the informant's identity if he wishes to discover evidence of the opinions of friends and family on his demeanor.

**II.     Motion for Bill of Particulars (Doc. 30).**

Defendant seeks a bill of particulars detailing which of Defendant's communications will be at issue at trial.

   A.     <u>Legal Standard</u>.

Under Fed. R. Crim. P. 7(c)(1), an indictment must contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *United States v. Chisum,* 502 F.3d 1237, 1244 (10th Cir. 2007) (quoting *United States v. Dashney,* 117 F.3d 1197, 1205 (10th Cir.1997)). "[I]t is generally sufficient that an indictment set forth an offense in the words of the statute itself, as long as those words themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *United States v. Hathaway,* 318 F.3d 1001, 1009 (10th Cir. 2003) (quoting *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)). "Therefore, where the indictment quotes the language of a statute and includes the date, place, and nature of illegal activity, it need not go further and allege in detail the factual proof that will be relied upon to support the charges." *United States v. Redcorn*, 528 F.3d 727, 733 (10th Cir. 2008) (internal quotation marks omitted), *quoting United States v. Dunn,* 841 F.2d 1026, 1029 (10th Cir.1988).

"The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense." *United States v. Ivy*, 83 F.3d 1266,

1281 (10th Cir.) (quotation omitted), cert. denied, 519 U.S. 901 (1996). "[T]he defendant is not entitled to notice of all of the *evidence* the government intends to produce, but only the *theory* of the government's case." *Id.*

B. Analysis.

1. Unfair Surprise. Initially, Defendant argues that he would be unfairly surprised at trial or unable to prepare his defense, because the indictment does not give him notice of which communications are at issue. The Court disagrees. The indictment puts Defendant on notice of the elements of the crime, the victims, and the time frame at issue. Furthermore, the Government clarified that all communications between February 1, 2016 and September 1, 2017 that were disclosed in discovery will be at issue to show Defendant's course of conduct. These include communications that were not sent directly to the victims, but were sent to the MGWRP office. The Government argues that the victims would be expected to see these communications, as they were managers. The Government does not intend to allege that any particular communication was a threat, but rather, that Defendant's course of conduct as shown by the communications disclosed in discovery would collectively show that he violated § 2261A(2).

Under these circumstances, the Government need not set forth the specific communications that will be presented at trial or the factual proof. *Dunn*, 841 F.2d at 1029 (indictment need not allege in detail the factual proof that will be relied upon). The full discovery, along with the indictment, makes it unlikely that Defendant will be subject to unfair surprise. *United States v. Ivy,* 83 F.3d 1266, 1281 (10th Cir. 1996) ("By providing complete discovery containing sufficient information to allow them to prepare their defense, the government gave Mr. Norwood and Ms. Traylor the tools necessary to anticipate and forestall

any surprise that might have resulted from the indictment"), *citing United States v. Sturmoski*, 971 F.2d 452, 460 (10th Cir. 1992) ("Given the government's full disclosure and Sturmoski's failure to show that he was "actually surprised at trial and thereby incurred prejudice to his substantial rights," the district court acted appropriately in denying his motion…"); *United States v. Nagi*, 253 F. Supp. 3d 548, 562 (W.D.N.Y. 2017). Therefore, the Court concludes that Defendant has adequate notice to prepare his defense and is not subject to unfair surprise.

Moreover, where the Government has provided full discovery, a bill of particulars is not necessary to aid a defendant in asserting a First Amendment defense. *Nagi*, 253 F. Supp. 3d at 562-63 (in overruling magistrate judge's order for bill of particulars, district court noted that motion to suppress or post-trial motion, not bill of particulars, is proper method to raise First Amendment challenge.).

2. <u>Double Jeopardy</u>. Defendant asserts that the indictment is insufficient to allow him to assert a double jeopardy defense in a later proceeding, because it does not specify the communications at issue. Defendant argues that double jeopardy issues may arise if the Government intends to use communications that were neither directed at the victims, nor sent from nor received in New Mexico.

The Government clarified that they intend to use all communications disclosed in discovery, because they could reasonably be expected to be seen by the three victims who held management positions. Based on this representation and indictment, the Court concludes that Defendant does not need a bill of particulars setting forth the communications at issue in order to assert a double jeopardy defense. *United States v. Levine*, 457 F.2d 1186, 1189 (10th Cir. 1972) ("The entire record of the proceedings may be referred to in the event of a subsequent similar prosecution."), *cited in United States v. Boston*, 718 F.2d 1511, 1515 (10th Cir. 1983) ("the

entire record, not just the indictment, may be referred to in order to protect against double jeopardy if a subsequent prosecution should occur."); *United States v. Washington*, 653 F.3d 1251, 1261 (10th Cir. 2011) (entire record may be referred to, in order to protect against double jeopardy in subsequent proceeding).

      3.    <u>Venue</u>.  Defendant argues that the indictment fails to adequately allege venue as to Count 3, because it appears that multiple communications were neither sent from, nor received in, New Mexico.

"Venue is a fact question, normally decided by the jury. Venue must be proved, as it is an element of the offense, but it need only be proved in this circuit by a preponderance of the evidence." *United States v. Cryar*, 232 F.3d 1318, 1323 (10th Cir. 2000) (internal citations omitted). Where no venue provision is present in a statute, "the place at which the crime was committed 'must be determined from the *nature of the crime alleged and the location of the act or acts constituting it.*' *Id.* at 1321. Venue may be proper in multiple districts, such as where an offense was "begun, continued, and completed". 18 U.S.C. § 3237. It appears that an interstate stalking charge may be brought where the criminal conduct occurred, or where the victims reside. *Shrader v. United States*, 2016 WL 299036, at *7 (S.D. W.Va. 2016).

Count 3 simply alleges that the charged conduct occurred in the District of New Mexico. Defendant argues that discovery indicates the crime may have occurred outside the District of New Mexico.  This appears to be a factual issue to be resolved at trial.  *United States v. Villalobos-Macias*, 280 F. Supp. 3d 1211, 1216 (D.N.M. 2017) (Armijo, J.); (where indictment on its face alleges venue in district, venue becomes an issue of fact to be resolved at trial and not through motion to dismiss).  Nevertheless, the Government should set forth in a bill of particulars the facts it thinks establishes venue.  *United States v. Wilson*, 2001 WL 798018, at *4

(S.D.N.Y. 2001) (Prior to trial, "it suffices for the government to allege with specificity that the charged acts support venue in this district."), *quoted in Villalobos-Macias*, 280 F. Supp. 3d at 1216.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Disclosure of the Identity of the Confidential Informant Referenced in Discovery Materials **(Doc. 29)** is **DENIED.** Defendant's Motion for Bill of Particulars **(Doc. 30)** is **GRANTED IN PART**, in that the Government should set forth the factual allegations establishing venue. All other relief requested in the Motion for Bill of Particulars is **DENIED.**

**IT IS SO ORDERED**.

_____
CHIEF UNITED STATES DISTRICT JUDGE